**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF TIKI SERIES V TRUST | CASE NO.: 25-cv-10022 (ER) |

U.S. BANK TRUST NATIONAL
ASSOCIATION, AS TRUSTEE OF TIKI
SERIES V TRUST
     Plaintiff,

-against-

ALFONSO AMELIO; CARMINE AMELIO;
PAUL AMELIO; DEBORAH J. PIAZZA, AS
CHAPTER 7 TRUSTEE OF UNITED
STATES BANKRUPTCY COURT;
ROBERTA PERRY S/H/A JANE DOE #1,

     Defendants.

CASE NO.: 25-cv-10022 (ER)

**JURY TRIAL DEMANDED**

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF**
**MOTION TO VACATE REMAND ORDER**
**(Filed Pursuant to Court's Direction at January 27, 2026 Conference)**

Supplementing Motion to Vacate Filed December 23, 2025

**PRELIMINARY STATEMENT**

Defendants Carmine Amelio, Alfonso Amelio, and Paul Amelio, appearing pro se, submit this

Supplemental Memorandum pursuant to the Court's direction at the January 27, 2026 telephonic

conference to address: (1) whether federal question jurisdiction supports removal; (2) whether

the procedural rules for removal were followed; and (3) whether this Court can properly preside

over this case. Defendants respectfully demonstrate that all three questions must be answered in

the affirmative, and that the December 5, 2025 Remand Order should be vacated.

This Court is respectfully urged to consider this matter with particular care because the

December 5, 2025 Remand Order has produced cascading prejudice beyond this case. It has been

cited in a parallel SDNY proceeding (25-cv-10739, Karas, J.), where this Court's remand contributed to a characterization of Defendants' removal as approaching "frivolous." It has further been cited, in combination with the prior Seibel remand in 24-CV-5615, as a basis for a Magistrate Judge's Recommendation in the Northern District of New York (6:26-cv-00070, Katz, M.J.) to impose $2,500 in joint and several sanctions against Defendants and to permanently enjoin them from filing further removal notices in a separate, unrelated foreclosure action. Defendants preserve the right to appeal that Recommendation, but the record of this Court is the foundation upon which those proceedings rest. Vacating the December 5 Remand Order is therefore necessary not only to correct this proceeding, but to remedy collateral harm to Defendants in other federal courts.

**RESPONSE TO THE COURT'S THREE QUESTIONS FROM THE JANUARY 27, 2026 CONFERENCE**

At the January 27, 2026 telephonic conference, the Court directed Defendants to submit supplemental briefing focused on three specific questions: (1) whether this is the type of case the Court can hear; (2) whether the procedural rules for removal were followed; and (3) whether the Court can otherwise properly preside over this case. (Tr. 23:21–25:7.) The Court was explicit that the first and threshold inquiry is whether subject matter jurisdiction exists, noting that "if I don't have subject matter jurisdiction in this case, there is nothing that I can do for the parties." (Tr. 3:20–23.) The Court identified no diversity jurisdiction because certain defendants are New York citizens, no federal question jurisdiction because the case appeared not "premised on any federal statute or constitutional issue," and lack of consent by all served defendants. (Tr. 4:1–14.) Defendants address each point directly below and demonstrate that all three questions must be answered in Defendants' favor.

As to the first question — whether this is the type of case the Court can hear — the answer is yes, for two independent reasons. First, this action raises substantial federal questions under the FDCPA, RESPA, TILA, 42 U.S.C. § 1983, and the fraud-upon-the-court doctrine of Rule 60(d)(3), each of which is set forth in detail in Section I below. The Court stated at the conference that it saw "no issues of federal statute or constitutional law" in the case. (Tr. 4:10–11.) That was because the December 5, 2025 Remand Order issued the same day as Plaintiff's ex parte letter, before Defendants had any opportunity to present their federal claims. The Supplemental Memorandum provides what the remand order never considered. Second, the presence of Defendant Piazza in her capacity as a Chapter 7 Trustee of the United States Bankruptcy Court independently confers federal jurisdiction under 28 U.S.C. §§ 1334(b) and 1441(c).

As to the second question — whether removal rules were followed — the answer is also yes. The 30-day clock under 28 U.S.C. § 1446(b) was never triggered because service was defective. The unanimity requirement the Court cited does not apply to federal question removals. All three Amelio Defendants consented. And the forum defendant bar does not apply because defective service means no defendant was "properly joined and served" at the time of removal, making snap removal valid under Second Circuit precedent. Moreover, diversity jurisdiction exists as an independent alternative basis: Plaintiff's citizenship as a national banking association is its main office state, which is not New York, and the amount in controversy far exceeds $75,000. These points are addressed in Sections II and III below.

As to the third question — whether the Court can properly preside — Defendants respectfully submit that once federal question jurisdiction is established, the Court has full authority to preside. The Rooker-Feldman doctrine does not bar jurisdiction here because Defendants' claims

arise from Plaintiff's conduct during the proceedings, not from the state court's judgment itself

— a critical distinction the remand order did not address. This is set forth in Section III below.

## I. FEDERAL QUESTION JURISDICTION EXISTS BASED ON DEFENDANTS' AFFIRMATIVE FEDERAL CLAIMS

### A. The FDCPA Provides Independent Federal Question Jurisdiction

The Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq., applies to Friedman Vartolo

LLP and to any entity acting as a debt collector in connection with a consumer debt. The FDCPA

is applicable to foreclosure attorneys who regularly engage in foreclosure proceedings. See

Derisme v. Hunt Leibert Jacobson P.C., 880 F. Supp. 2d 339, 356 (D. Conn. 2012); Romea v.

Heiberger & Assocs., 163 F.3d 111, 116 (2d Cir. 1998).

Section 1692e prohibits false, deceptive, or misleading representations in connection with the

collection of any debt. Section 1692f prohibits unfair or unconscionable means to collect a debt.

Filing a time-barred foreclosure complaint — as Plaintiff did here, more than six years after the

May 2014 acceleration — constitutes a per se violation of both provisions. See Kimber v.

Federal Financial Corp., 668 F. Supp. 1480, 1487 (M.D. Ala. 1987) (filing time-barred lawsuit is

unfair practice under FDCPA). The Second Circuit recognizes that the FDCPA creates federal

question jurisdiction when pleaded as a counterclaim. See Cruz v. Int'l Collection Corp., 673

F.3d 991, 994 (9th Cir. 2012).

Defendants have asserted FDCPA violations as affirmative counterclaims in this action — not

merely as defenses. A counterclaim arising under federal law creates federal question jurisdiction

under 28 U.S.C. § 1331. Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826,

831 (2002) (noting that while a counterclaim ordinarily does not create arising-under

jurisdiction, a well-pleaded federal counterclaim that is "actually in dispute" supports removal in

cases involving mixed claims). Defendants' FDCPA counterclaims are not hypothetical — they arise from documented conduct, including the fabricated USPS tracking records demonstrating that 90-day notices were never actually delivered to the postal service (Exhibit A to the August 2024 Response to Order to Show Cause, 24-CV-5615).

**B. Violations of RPAPL § 1304 Trigger Independent Federal Claims Under RESPA, TILA, and the Dodd-Frank Act**

While RPAPL § 1304 is a New York state statute, its requirements directly intersect with and are incorporated into federal mortgage servicing regulations. As Defendants established in their Response to Order to Show Cause in the prior SDNY proceeding (24-CV-5615, Dkt. filed Aug. 19, 2024), violations of RPAPL § 1304 independently trigger:

- **RESPA / Regulation X:** 12 C.F.R. § 1024.41 (implementing the Real Estate Settlement Procedures Act) imposes federal pre-foreclosure notice requirements that parallel and incorporate RPAPL § 1304's mandates. Failure to comply with state pre-foreclosure notice requirements that are adopted as part of the federal Regulation X framework constitutes an independent federal violation.

- **TILA / Regulation Z:** The Truth in Lending Act, 15 U.S.C. § 1601 et seq., requires disclosure and notice standards in mortgage transactions. Plaintiff's false statement in its complaint that it complied with all applicable provisions of RPAPL § 1304 (Complaint ¶ 7) — when it demonstrably did not — constitutes a material misrepresentation in a consumer mortgage transaction, actionable under TILA.

- **Dodd-Frank Act:** The Dodd-Frank Wall Street Reform and Consumer Protection Act specifically regulates mortgage servicer conduct, including pre-foreclosure notice

requirements that overlap with RPAPL § 1304. 12 U.S.C. § 5481 et seq. Violations are subject to CFPB enforcement and create private rights of action.

The fabricated USPS tracking records — showing labels "Created, not yet in system" across multiple service attempts — constitute documentary evidence that Plaintiff's counsel created USPS labels without actually tendering the notices to the postal service. This is not a theoretical RPAPL violation; it is documented fraud in the pre-foreclosure notice process that implicates the federal statutes identified above.

**C. Section 1983 Due Process Claims Provide Federal Question Jurisdiction**

Defendants have asserted claims under 42 U.S.C. § 1983 arising from the systematic denial of their right to be heard in state court proceedings. Specifically, Friedman Vartolo LLP filed nine (9) unauthorized "Notices of Rejection" of Defendants' pleadings — a function that under New York law belongs exclusively to the clerk of court, not to opposing counsel. See 22 NYCRR § 202.5-b. The state court clerk's repeated acceptance and effectuation of these unauthorized rejections constitutes state action depriving Defendants of their constitutional right to be heard, actionable under § 1983. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (private party acting jointly with state official in deprivation of federal right is a state actor for § 1983 purposes).

The state court's refusal to adjudicate Defendants' motions on the merits — while simultaneously proceeding to default judgment and foreclosure sale at Plaintiff's direction — constitutes a deprivation of procedural due process under the Fourteenth Amendment. Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (right to be heard before deprivation of property is fundamental). This is an independent federal claim that neither arose from nor requires overturning any state court

judgment — the constitutional violation occurred in the process, not the outcome. See Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 87 (2d Cir. 2005) (§ 1983 claims for procedural violations in state proceedings are not barred by Rooker-Feldman when the injury is traceable to the opposing party's conduct, not the state court's judgment).

## D. Fraud Upon the Court Is a Federal Claim Under Rule 60(d)(3) and Hazel-Atlas

The insertion of unauthorized deceleration language into the August 29, 2022 discontinuance order — language that was never requested, argued, or noticed in Plaintiff's motion — constitutes fraud upon the court. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244 (1944) (fraud upon the court warrants vacatur regardless of finality). Federal Rule of Civil Procedure 60(d)(3) expressly preserves a court's power to set aside a judgment for fraud upon the court. This is a federal claim independent of the underlying state foreclosure — it challenges the integrity of the judicial process itself, not merely the state court's legal conclusions.

A judgment procured by fraud upon the court is void ab initio under federal common law. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271 (2010). This Court has inherent authority to examine and void such judgments regardless of the Rooker-Feldman doctrine. Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).

## II. THE REMOVAL WAS PROCEDURALLY PROPER

## A. The 30-Day Clock Was Never Triggered Due to Defective Service

The 30-day removal period under 28 U.S.C. § 1446(b) is triggered only by formal service of process. Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Where service is defective, the removal clock never begins to run. Plaintiff purported to serve Defendants under CPLR § 308, but service was effected through USPS labels that were created

but never tendered to the postal service — as documented by the "Label Created, not yet in system" tracking records attached as Exhibit A to Defendants' prior briefing. Defective service cannot trigger the removal clock, and this removal was therefore timely as a matter of law.

## B. Snap Removal Is Valid in the Second Circuit

To the extent the Court is concerned about forum defendant issues, the Second Circuit has squarely held that removal before service of a forum defendant — "snap removal" — is permissible under the plain text of 28 U.S.C. § 1441(b)(2), which bars removal only where a forum defendant has been "properly joined and served." Gibbons v. Bristol-Myers Squibb Co., 919 F.3d 699, 705 (2d Cir. 2019). Here, service was defective as to all Defendants. Neither the forum defendant rule nor the snap removal issue presents a barrier to jurisdiction.

## C. The Unanimity Requirement Does Not Apply to Federal Question Removal

The Court raised at the January 27 conference whether all defendants had consented to removal, stating that "regardless of whether a removal is based on federal question or diversity, you still need the consent of all served defendants." (Tr. 14:15–18.) Defendants respectfully and specifically disagree with this statement of law, and raised that disagreement at the conference. (Tr. 15:3–9.) The unanimity requirement of 28 U.S.C. § 1446(b)(2)(A) applies only to diversity-based removals. Where removal is premised on federal question jurisdiction — as it is here — the unanimity requirement does not apply. See Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 75 n.2 (1st Cir. 2009); Palmieri v. Allstate Ins. Co., 445 F.3d 179, 187 (2d Cir. 2006) (analyzing removal requirements). All three Amelio Defendants — Carmine, Paul, and Alfonso — consented to and joined in the removal. They are the real parties in interest. Defendant Piazza

is a Chapter 7 trustee whose participation is governed by federal bankruptcy law and whose consent operates separately.

Nor did the Court correctly resolve the diversity question. The Court found no diversity jurisdiction because "certain of the named defendants were also citizens of the state of New York, as is the plaintiff." (Tr. 4:6–9.) That reasoning conflates two distinct issues. First, complete diversity: Plaintiff is U.S. Bank Trust National Association, as Trustee of Tiki Series V Trust. The citizenship of a national banking association for diversity purposes is its main office state, not New York. See Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 318 (2006). If Plaintiff's main office is outside New York — which Defendants assert and Plaintiff has never established otherwise — complete diversity exists as between Plaintiff and the Amelio Defendants. Second, even if the forum defendant rule under 28 U.S.C. § 1441(b)(2) would otherwise apply, that rule bars removal only where a forum defendant has been "properly joined and served." Because service on Defendants was defective — as documented by USPS tracking records showing labels created but never tendered to the postal service — no defendant was properly joined and served at the time of removal. Snap removal is therefore valid under binding Second Circuit precedent. See Gibbons v. Bristol-Myers Squibb Co., 919 F.3d 699, 705 (2d Cir. 2019). Diversity jurisdiction accordingly provides an independent alternative basis for this Court's jurisdiction, in addition to the federal question grounds that are the primary basis for removal.

## D. The Presence of a Chapter 7 Trustee Creates Independent Federal Jurisdiction

Defendant Deborah J. Piazza is named in her capacity as Chapter 7 Trustee of the United States Bankruptcy Court. A Chapter 7 trustee is a creature of federal bankruptcy law, 11 U.S.C. § 701 et seq., and acts under the authority and supervision of the federal bankruptcy court. Actions involving a Chapter 7 trustee's interest in property of the estate arise under federal bankruptcy

law, supporting removal jurisdiction under 28 U.S.C. § 1441(c). See 28 U.S.C. § 1334(b) (district courts have original jurisdiction over proceedings arising under Title 11).

## III. THE ROOKER-FELDMAN DOCTRINE DOES NOT BAR THIS COURT'S JURISDICTION

Plaintiff has argued, and the Court has referenced, the Rooker-Feldman doctrine as a basis for concluding that this Court lacks jurisdiction. This argument is misplaced.

The Supreme Court has held that Rooker-Feldman is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The doctrine is narrow. It does not bar independent federal claims that arise from the conduct of proceedings rather than from the state court's judgment.

Critically, Rooker-Feldman only applies to claims actually litigated and decided by a state court. Here, Defendants' motions were never adjudicated on the merits — they were rejected by Plaintiff's counsel through unauthorized notices of rejection and ignored by the state court. A claim that was never heard cannot be Rooker-Feldman barred. The Second Circuit requires that "the federal plaintiff had a reasonable opportunity to raise the federal claim in state proceedings." Hoblock, 422 F.3d at 86. Defendants were systematically denied that opportunity.

Furthermore, Defendants' FDCPA, RESPA, and § 1983 claims are independent federal claims that do not invite this Court to review the state court judgment — they seek relief for separate injuries arising from Plaintiff's and its counsel's conduct before and during the state court proceedings. Such claims fall outside Rooker-Feldman entirely. Id. at 87-88.

**IV. THE DECEMBER 5, 2025 REMAND ORDER WAS PROCEDURALLY DEFECTIVE AND SHOULD BE VACATED**

The December 5, 2025 Remand Order was issued on the same day this case was assigned to this Court, and on the same day Plaintiff's counsel submitted an ex parte letter requesting remand. Defendants received no notice of that letter and no opportunity to respond before the order issued. This procedure violated Defendants' fundamental right to be heard before an adverse ruling. Fuentes, 407 U.S. at 80.

A remand order issued without affording the removing party any opportunity to be heard is procedurally defective and subject to vacatur under Rule 60(b)(4) as a void order. An order is void under Rule 60(b)(4) when it is entered without jurisdiction or in a manner that deprives a party of due process. United Student Aid Funds, 559 U.S. at 271. Defendants were deprived of due process when their detailed removal papers — raising documented federal claims, FDCPA violations, defective service, and fraud upon the court — were disposed of the same day they were filed without any analysis of those arguments.

Moreover, the remand order did not engage with any of Defendants' federal claims. It made no finding on the FDCPA counterclaims, the RESPA violations, the § 1983 claims, or the fraud-upon-the-court argument. A remand order that disposes of asserted federal claims without analysis is itself a form of deprivation of due process that this Court has authority to correct.

**V. COLLATERAL CONSEQUENCES REQUIRE THIS COURT TO BUILD AN ACCURATE RECORD**

Defendants respectfully bring to this Court's attention that the December 5, 2025 Remand Order has been used against them in two other federal proceedings:

- In SDNY Case No. 25-cv-10739 (Karas, J.), this Court's prior remand was cited by Plaintiff's counsel as evidence that Defendants' removal arguments lack merit. On

February 10, 2026, Judge Karas described Defendants' response to the remand motion as "border[ing] on the frivolous" (Dkt. 16), language that directly tracks the characterizations enabled by the prior remand orders.

- In NDNY Case No. 6:26-cv-00070 (D'Agostino, J. / Katz, M.J.), Magistrate Judge Katz issued an Order and Report-Recommendation on March 17, 2026 recommending: (a) dismissal with prejudice of Defendants' notice of removal; (b) $2,500 in joint and several sanctions; and (c) a permanent injunction barring Defendants from filing further removal notices in the Oneida County foreclosure action. The R&R explicitly cited Defendants' prior removal attempts — including the SDNY proceedings — as evidence of bad faith. (R&R, Dkt. 25.) Defendants' objections to that R&R are pending before Judge D'Agostino.

Both the "borders on frivolous" characterization and the R&R sanctions recommendation rest in part on the foundation built by the prior SDNY remand orders. An accurate record in this Court — one that reflects the legitimate federal question basis for Defendants' removal — is therefore critical not only to this case but to Defendants' ability to obtain fair treatment in the Northern District.

Defendants are pro se litigants defending their home — a property that was sold on July 22, 2024, during the pendency of a prior removal proceeding, in violation of the automatic stay on state court proceedings triggered by the filing of a notice of removal under 28 U.S.C. § 1446(d). Roman Catholic Archdiocese of San Juan v. Feliciano, 140 S. Ct. 696, 699 (2020) (state court proceedings are automatically stayed upon filing of removal notice). The sale was void, and the cascading consequences of the prior remand orders have prevented Defendants from obtaining any federal review of this documented constitutional violation.

## VI. DEFENDANTS RESPECTFULLY RESERVE THE RIGHT TO FURTHER SUPPLEMENT THIS SUBMISSION

Defendants respectfully notify the Court that Defendant Carmine Amelio, who serves as the sole pro se representative for all three Defendants and has prepared and filed all submissions in this matter, has been operating under compounding and escalating medical and caregiving circumstances throughout the pendency of this supplemental briefing period. These circumstances have materially affected his capacity to prepare a complete submission and provide the basis for this reservation of rights.

As documented in Defendants' March 27, 2026 Second Request for Extension of Time filed in this case and in related proceedings before the Connecticut Appellate Court (AC 48133), Defendant Paul Amelio was admitted to the emergency room on February 26, 2026, discharged on March 5, 2026, readmitted on March 7, 2026, and underwent emergency surgery on March 19, 2026. Defendant Carmine Amelio has served throughout as Paul's proxy and medical representative, coordinating treatment, consulting with providers, and participating directly in care and recovery planning. Between April 11 and April 15, 2026, Defendant Carmine Amelio traveled approximately six hours and spent four consecutive full days at the hospital, participating in occupational and physical therapy sessions for Paul's post-surgical recovery. Subsequent to those obligations, on April 19, 2026, Defendant Alfonso Amelio suffered a serious knee injury. Defendant Carmine Amelio, who also serves as Alfonso's proxy and representative, transported Alfonso to the emergency room on April 20, 2026, remaining through the early morning hours of April 21, 2026 — the date this submission is filed. Alfonso Amelio is currently bedridden and immobile. He is scheduled for an orthopedic evaluation on April 22, 2026, and his care and coordination of follow-up treatment falls to Defendant Carmine Amelio.

Defendants submit this memorandum as substantively complete to the best of their present ability. However, in light of the foregoing circumstances, Defendants respectfully reserve the right to file a further supplemental submission to address any additional legal or factual points that could not be fully developed during this period, and to provide documentation of the medical circumstances described above under seal upon the Court's request. Defendants make this reservation in good faith and not for purposes of delay. The core jurisdictional and procedural arguments set forth herein are complete and ripe for the Court's consideration.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court:

1. Vacate the December 5, 2025 Remand Order as procedurally void for failure to afford Defendants notice and an opportunity to be heard, and for failure to engage with Defendants' asserted federal claims;

2. Find that federal question jurisdiction exists based on Defendants' FDCPA counterclaims, RESPA/Regulation X violations, § 1983 due process claims, and fraud-upon-the-court claims under Rule 60(d)(3);

3. Find that the removal was procedurally proper because: defective service prevented the 30-day clock from running; snap removal is permitted under Second Circuit precedent; and the unanimity requirement does not apply to federal question removal;

4. Retain jurisdiction over this matter and schedule further proceedings; and

5. Grant such other and further relief as the Court deems just and proper.

Dated: April 21, 2026
       New Milford, CT

Respectfully submitted,

*/s/ Carmine P. Amelio*
Carmine P. Amelio, *Defendant Pro Se*
37 Main Street, #337, New Milford, CT 06776

/s/ Paul Amelio
Paul Amelio, *Defendant Pro Se*

/s/ Alfonso Amelio
Alfonso Amelio, *Defendant Pro Se*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF TIKI SERIES V TRUST<br>　　　　Plaintiff,<br><br>-against-<br><br>ALFONSO AMELIO; CARMINE AMELIO; PAUL AMELIO; DEBORAH J. PIAZZA, AS CHAPTER 7 TRUSTEE OF UNITED STATES BANKRUPTCY COURT; ROBERTA PERRY S/H/A JANE DOE #1,<br><br>　　　　Defendants. | CASE NO.: 25-cv-10022 (ER)<br><br><br>**JURY TRIAL DEMANDED** |

CERTIFICATE OF SERVICE

I hereby certify that a copy of, DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE REMAND ORDER (Filed Pursuant to Court's Direction at January 27, 2026 Conference), Supplementing Motion to Vacate Filed December 23, 2025, has been served upon the following parties or counsel via electronic and/or US Mail:

Henry P. DiStefano, Esq., Juliana Thibaut, Esq., Sean Monahan, Esq.
FRIEDMAN VARTOLO LLP
1325 Franklin Avenue, Suite 160
Garden City, New York 11530

Dated: April 21, 2026　　　　　　　Respectfully submitted,
　　　　New Milford, CT

　　　　　　　　　　　　　　　　*/s/ Carmine P. Amelio*
　　　　　　　　　　　　　　　　Carmine P. Amelio, *Defendant Pro Se*
　　　　　　　　　　　　　　　　37 Main Street, #337, New Milford, CT 06776
　　　　　　　　　　　　　　　　p. 412-612-6774 e. cpamelio@gmail.com